1  R. Brent Wisner, Esq. (SBN 276023)
2  rbwisner@wisnerbaum.com
   Stephanie B. Sherman, Esq. (SBN 338390)
3  ssherman@wisnerbaum.com
4  **WISNER BAUM, L.L.P**
   11111 Santa Monica Boulevard, Suite 1750
5  Los Angeles, CA 90025
   Telephone: (310) 207-3233
6

7  *Attorneys for Plaintiff*

8
   Paul S. Chan (SBN 183406)
9  pchan@birdmarella.com
   Ashley D. Bowman (SBN 286099)
10 abowman@birdmarella.com
11 Abraham Rejwan (SBN 335927)
    arejwan@birdmarella.com
12 **BIRD, MARELLA, RHOW, LINCENBERG,**
   **DROOKS & NESSIM, LLP**
13
   1875 Century Park East, 23rd Floor
14 Los Angeles, CA 90067-2561
15 Telephone: (310) 201-2100

16
   *Attorneys for Defendant, Genomma Lab USA, Inc.*
17

18            **UNITED STATES DISTRICT COURT**

19           **EASTERN DISTRICT OF CALIFORNIA**

20

21 | CHINYERE HARRIS on behalf of | Civil Action No. 1:24-cv-00289-JLT-SAB |
   herself, and all others similarly situated,
22 and the general public,                    **AMENDED CONSENT DECREE**
                          Plaintiffs,
23

24            v.

25
   GENOMMA LAB USA, INC and
26 DOES 1 to 50, Inclusive,
                          Defendants.
27

28
                          AMENDED CONSENT DECREE

Plaintiff CHINYERE HARRIS ("Plaintiff") and Defendant GENOMMA LAB

USA, INC. ("Defendant") (collectively with Plaintiff, the "Parties"), by and through

their respective counsel of record, agree to entry of this Amended Consent Decree (the

"Decree") without contest, and before any discovery, evidence, or testimony is taken in

this case.

## I. BACKGROUND

1.      Plaintiff filed her class action complaint against Defendant on March 8,

2024 (the "action") alleging Defendant designed, manufactured, marketed, and sold

acne treatment products formulated with benzoyl peroxide ("BPO Products"), that

degrade to benzene when exposed to normal and expected temperatures use, handing

and storage conditions. ECF No. 1.  Defendant's BPO Product is Aspexia Acne

Treatment Cream formulated with 10% BPO ("Defendant's BPO Product").  This is the

only BPO Product made or sold by Defendant.

2.      Benzene is a known human carcinogen linked to blood cancers, and other

adverse health effects. Drug products contaminated with benzene are deemed

misbranded, adulterated, and not legally available for sale in the United States.[1]

3.      BPO Products are regulated by the U.S. Federal Drug Administration

("FDA") as "drug products"; thus, Defendant was required to follow the FDA's

regulations on labeling requirements, manufacturing practices, and product stability to

---

[1] *See* 21 U.S.C. § 351(a)(2011); *see also* § 351(b)-(d) (noting that a lack of purity or mixture with another substance also renders drug adulterated).

ensure its BPO Product did not degrade or form contaminants such as benzene.  In

manufacturing BPO Products, benzene is not used nor allowed in any finished drug

product except under a rare exception – where the use of benzene is unavoidable to

produce a drug product with a significant therapeutic advantage otherwise not

available.  In that instance, benzene must be restricted to two parts per million (ppm).

Plaintiff alleges Defendant's BPO Product does not meet this rare exception; thus, there

should not be any benzene in Defendant's BPO Product.  Defendant denies these

allegations.

    4.    This action was filed on March 8, 2024, by Plaintiff on behalf of herself

and other consumers similarly situated who used Defendant's BPO Product without

knowing they degraded to benzene.  The action was filed after the release of

independent testing by Valisure, LLC ("Valisure"), which found on-market acne

treatment drugs formulated with BPO degrade to benzene when exposed to expected

consumer use, handling, and storage conditions and can form levels of benzene up to

800 times the FDA 2 ppm maximum.  Valisure's methodology and testing has been

peer-reviewed and published in the prestigious epidemiological journal, Environmental

Health Perspectives.[2]  However, Valisure's methodology and testing has also been

---

[2] Kucera K, et al., *Benzoyl Peroxide Drug Products Form Benzene*, 3 ENV. HEALTH PERSPECT. 132, 37702-1–3 (Mar. 2024).

criticized by industry manufacturers as deficient, as well as inappropriate for regulatory

evaluation under FDA standards.[3]

5.     In March 2024, Defendant voluntarily stopped all marketing and

production of its BPO Product and does not intend to continue selling it in the future.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:**

7.     **Jurisdiction and Venue.**  This Court has jurisdiction over this action and

all Parties to this action under 28 U.S.C. §§ 1331 and 1345, 21 U.S.C. § 332, and its

inherent equitable authority.  To the extent that this Court lacks personal jurisdiction

over any Party, each Party consents to this Court's jurisdiction for any issues related to

enforcement and/or adjudication of this Decree and the underlying lawsuit.  Venue is

proper in the Eastern District of California under 28 U.S.C. § 1391(b) because a

substantial part of the events or omissions giving rise to the claims occurred in this

District.  To the extent that venue is not proper, each Party consents to this Court's

jurisdiction for any issues related to enforcement and/or adjudication of this Decree and

the underlying lawsuit.  This Court retains jurisdiction over this action and the parties

thereto for the purpose of enforcing and modifying this Decree and for the purpose of

granting such additional relief as may be necessary or appropriate.

---

[3] *See*, *e.g.*, December 5, 2022 FDA Letter to Valisure; July 6, 2021 FDA Inspection Report; July 27, 2021 Valisure Letter to FDA at 1, 3; FDA, *FDA Updates and Press Announcements on NDMA in Zantac (Ranitidine)* (Oct. 2, 2019); *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 644 F. Supp. 3d 1091-93, 1174-75 (S.D. Fla. 2022); Editorial Board, *The Zantac Scare and Junk Science*, WALL ST. J., Dec. 9, 2022.

## DEFINITIONS

8.    "Batch" refers to any formulated or finished product not packaged for consumer purchase.  "Benzene" refers to the chemical compound, $C_6H_6$.

9.    "Benzoyl Peroxide" or "BPO" refers to the chemical compound $(BzO)_2$.

10.    "BPO Products" refers to any product that contains BPO, whether prescription or over the counter, in any medium, and in any combination, which had BPO in it.  This definition also includes any BPO product that may have never been approved for sale.

11.    "Inventory BPO Products" refers to any BPO Products in Defendant's possession, custody, or control.

12.    "On Market" refers to BPO Products available for retail sale in the United States.

## TERMS AND CONDITIONS

7.    This Decree shall apply only to Defendant and its agents who are involved with the manufacture, processing, preparing, packing, labeling, holding, marketing, or distribution of its BPO Product, and shall remain in effect until specifically dissolved or vacated by an Order from this Court.

8.    **Ceased Marketing and Production of BPO Product.**  Defendant voluntarily stopped making its BPO Product in March 2024.  Defendant shall not resume marketing and production of its BPO Product in the future unless its manufacturing policies include a requirement that its BPO Product be tested by an

independent third party to ensure it does not degrade to benzene, under normal and expected consumer use.  Defendant agrees to provide written notice to the FDA outlining its BPO Product testing protocol before recommencing any BPO Product production in the future.  To the extent Defendant retains its BPO Product that has not been sold, Defendant shall not sell such Inventory BPO Product.  To the extent applicable, Defendant shall maintain records of the number of Inventory BPO Product, identify where it is stored, and whether/when it has been destroyed, for one year upon the issuance of this Decree.

9.     **Limited to No Availability of BPO Product On Market.**  Defendant is informed and believes, and therefore represents, that its BPO Product is no longer available or soon to be unavailable On Market, and that primary retailers of Defendant's BPO Product have exhausted, or will soon exhaust, all stock of the BPO Product.  Defendant further represents that the BPO Product's market share since 2019 is less than one-twentieth of one percent of all US Acne Products; therefore the current presence of its BPO Product On Market is *de minimis*.

10.     **Destruction of BPO Products.**  To the extent Defendant locates any BPO Product in its possession, custody, or control, Defendant shall destroy it.  Defendant shall bear the costs of destruction and shall be responsible for ensuring the destruction is carried out in a way that complies with all applicable federal and state environmental laws, and any other applicable federal or state law.  To the extent that Defendant is under a separate legal obligation to preserve all or a portion of any products, Defendant

shall be allowed to segregate and keep the products for the duration of such

preservation obligation.

11.    **Preservation of BPO Product Sales Records.**  Defendant shall retain all

sales, shipping, and distribution records including: the product name; the product size;

the batch, lot, and manufacturing codes; and the names of customers, retailers, or

distributors to whom the product was shipped, along with quantities shipped.

Defendants shall make the records described in this paragraph available to the FDA

upon request.

12.    **Compliance.**  Defendant shall maintain records of all the steps taken above

and shall make the records available to the Plaintiff's counsel or the FDA upon request.

Defendant shall provide to Plaintiff's counsel an affidavit of compliance with the terms

of the Decree within 30 days of its entry.  If Defendant fails to comply with any

provisions of the Decree, Plaintiff may file a motion for contempt seeking liquidated

damages in the amount of $5,000 for each day the Defendant is in violation of the

Decree, court costs, and reasonable attorneys' fees should Plaintiff's counsel be

deemed a prevailing party.

13.    **Not Confidential.**  The terms and conditions of this Decree are not

confidential and shall be publicly available.

14.    **Attorneys' Fees and Court Costs.**  The Parties are to bear their own

attorneys' fees and costs in this action except in the case of any Decree contempt or

enforcement actions.

AMENDED CONSENT DECREE

15.    **Dismissal with Prejudice.**  Within five (5) calendar days of Plaintiff's receipt of Defendant's affidavit of compliance with the terms of the Decree, Plaintiff will file a Stipulation of Dismissal with Prejudice of the above-captioned action with prejudice pursuant to Federal Rules of Civil Procedure 41(a)(1)(A)(ii).


(Consent of the parties is reflected on the next page._

7
AMENDED CONSENT DECREE

1    The undersigned consent to the entry of this Decree.

2

3  DATED: October 29, 2024          **WISNER BAUM LLP**

4                                    By: */s/ Stephanie Sherman*

5                                        Stephanie Sherman, Esq. (SBN: 338390)
                                         ssherman@wisnerbaum.com

6                                        11111 Santa Monica Boulevard, Suite 1750
                                         Los Angeles, CA 90025

7                                        Telephone: (310) 207-3233

8                                        Facsimile: (310) 820-7444

9
                                    *Attorneys for Plaintiff*
10

11                                  **BIRD, MARELLA, RHOW,**
                                    **LINCENBERG, DROOKS & NESSIM, LLP**
12  DATED: October 29, 2024

13                                  By: */s/ Ashley D. Bowman (with permission)*
                                        Ashley D. Bowman
14

15                                      ASHLEY D. BOWMAN (SBN 286099)
                                        abowman@birdmarella.com
16                                      PAUL S. CHAN (SBN 183406)
                                        pchan@birdmarella.com
17                                      ABRAHAM REJWAN (SBN 335927)
                                        arejwan@birdmarella.com
18
                                        1875 Century Park East, 23rd Floor
19                                      Los Angeles, CA 90067-2561
                                        Telephone: (310) 201-2100
20                                      Facsimile: (310) 201-2110
21

22                                  *Attorneys for Defendant Genomma Lab USA, Inc*

23

24      IT IS SO ORDERED.

25                                  Dated: _____
                                         UNITED STATES DISTRICT JUDGE
26

27

28

8
AMENDED CONSENT DECREE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED CONSENT DECREE